AMALGAMATED TRUST AND SAVINGS BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF GLENVIEW *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-1755

Opinion filed June 26, 1981.

William J. Harte, Ltd., of Chicago, for appellants.

Christine Hehmeyer Rosso, of Chapman & Cutler, of Chicago, and Zachary D. Ford, of Glenview, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs, Amalgamated Trust and Savings Bank (Amalgamated Trust) and Terrecom Development Group, Inc. (Terrecom), who are nonresidents of defendant, Village of Glenview (Glenview), brought an action against Glenview to compel it to supply water service to them through a water company which the Village purchased. Injunctive relief was also sought against defendants, Illinois Department of Transportation (IDOT) and John D. Kramer, Secretary of the Illinois Department of

Transportation, to prevent them from allocating water to Glenview until water was made available to plaintiffs on the same terms and conditions as required of Glenview residents. The trial court dismissed plaintiffs' complaint for its failure to state a cause of action.

Plaintiffs appeal, and raise the following issues: (1) Glenview assumed the obligation to supply water to plaintiffs when it purchased a water company then serving customers located within the company's certificated area of convenience and necessity, a portion of which included plaintiffs' property; (2) Glenview is estopped from denying its obligation to provide plaintiffs with water by virtue of misrepresentation made to IDOT at a public hearing to receive an allocation of water; (3) Glenview's conduct in requiring plaintiffs to annex to the municipality as a condition to receiving water service violates State antitrust law (Ill. Rev. Stat. 1977, ch. 38, par. 60—3); and (4) the trial court erred in finding that plaintiffs' action against IDOT was an improper attempt to collaterally attack its allocation order.

Plaintiffs' five-count complaint reveals the following. Amalgamated Trust, as trustee, is the owner of about 36 acres of property in unincorporated Northfield Township, Cook County, Illinois. Terrecom is both a contract purchaser and contract lessee of the property. On July 26, 1960, the Illinois Commerce Commission granted to Northfield Woods Water and Utility Company, Inc. (Northfield), a Certificate of Convenience and Necessity authorizing it to operate a public water supply system in an area which included plaintiffs' property. Subsequently, Glenview petitioned IDOT, the agency responsible for apportioning Lake Michigan water, for a supply of water. On August 6, 1975, Glenview represented to IDOT at a public hearing that it was in the process of acquiring Northfield, and that it would be responsible for providing water to the certificated area.

On April 15, 1977, IDOT issued an opinion and order allocating water to Glenview, but the order did not include a quantity for the Northfield system. Glenview then petitioned IDOT for a rehearing, stating that the allocation given it was insufficient to meet the projected needs of its expanded system as a result of the anticipated acquisition of Northfield and another private company. The petition was denied, but Glenview was permitted to file a petition for modification of the order.

On April 4, 1978, IDOT held hearings for emergency allocations and granted Glenview the requested water supply.

Glenview adopted an ordinance on July 17, 1978, which provided that water service would not be provided to property beyond its corporate limits unless those desirous of the service petitioned to annex to Glenview and conformed to its land-use plans. Plaintiffs wished to utilize Glenview's water system without annexing, and sought to develop their

property in a manner inconsistent with Glenview's ordinance. In reliance upon water supply from Northfield, however, Terrecom entered into substantial contractual relations with Amalgamated Trust, and expended large amounts of money for the development of the subject property. Glenview refused to furnish water to plaintiffs' property in the absence of compliance with its ordinance and comprehensive land use requirements. Persistence in this refusal would require installation of a separate and independent water supply system by plaintiffs at a cost of over $900,000.

Count I of the complaint sought a declaratory judgment that plaintiffs are entitled to water service from Glenview and that the latter's ordinance restricting this supply is invalid. Count II requested a mandatory injunction restraining Glenview from enforcing the ordinance and directing it to supply water to plaintiffs. Count III asked for IDOT to be enjoined from allocating additional water to Glenview and the area previously certificated to Northfield unless water was made available to them without the stated condition. Count IV prayed for money damages against Glenview in the amount of $900,000. Count V requested damages in an amount of $2,700,000 for Glenview's violations of Illinois antitrust law (Ill. Rev. Stat. 1977, ch. 38, par. 60—3) in limiting the supply of water to nonresidents and thereby establishing a monopoly in the water supply business.

OPINION

Plaintiffs first contend that Glenview, a municipality, had a duty to provide them with water. This obligation allegedly arose upon Glenview's purchase of Northfield, the private water company previously serving customers under a certificate of convenience and necessity (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 56) in the area which included plaintiffs' property. It is argued that Northfield had an absolute duty to serve *all* the property in the area designated under the certificate of convenience and necessity, and that this obligation was necessarily assumed by Glenview.

It is undisputed that plaintiffs' property is located beyond the corporate limits of Glenview. Generally, in Illinois, a municipality has no duty to provide water service beyond its boundaries. (Ill. Rev. Stat. 1977, ch. 24, par. 11—149—1.) The Illinois Municipal Code provides in section 11—149—1 that such service is discretionary and that, "[t]he corporate authorities * * * *may* provide by ordinance for the extension and maintenance of municipal sewers and water mains, or both, in specified areas outside the corporate limits." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 24, par. 11—149—1.

In *Exchange National Bank v. Behrel* (1972), 9 Ill. App. 3d 338, 292 N.E.2d 164, the First District of the Illinois Appellate Court interpreted the word "may" in section 11—149—1 of the Municipal Code to mean that

a municipality's grant of authority to supply water to nonresidents is discretionary. The court further found that nonresidents can only compel service if they are able to plead a legal right to it. In *Exchange*, the City of Des Plaines contracted with Rand, a nonresident, to supply water to homes located within Rand's subdivision. Subsequently, Kiwanis, which was located outside the subdivision, paid Rand for the right to tap into the water main. Permission was granted by the City of Des Plaines, and the connection was made. Plaintiff purchased Kiwanis' property a few years later, and paid Rand $1,800 to use the water. Then, the City of Des Plaines annexed the Rand subdivision and attempted to include plaintiff's property. Plaintiff resisted the City's attempt to annex its property, since plaintiff planned to erect multiple dwelling units which conformed with the county ordinances, but would have been in violation of the applicable Des Plaines Zoning Ordinance. Des Plaines refused plaintiff's request for water service, causing the latter to bring suit. The appellate court, citing *Rehm v. City of Batavia* (1955), 5 Ill. App. 2d 442, 125 N.E.2d 831, found that Des Plaines had no duty to supply water to plaintiff, and stated:

> " 'It is well established that a municipality is under no duty to furnish a water supply to nonresidents in the absence of contractual relationship obligating it so to do.' [Citation.]" (9 Ill. App. 3d 338, 341, 292 N.E.2d 164, 167.)

The court reasoned that Kiwanis was supplied with water gratuitously by Des Plaines rather than by contractual duty and that the City's annexation attempt did not abrogate a duty to plaintiff, since such a duty never existed. Despite acquiescing in Kiwanis' use of its water supply, Des Plaines was not required to provide service to plaintiff's land, "especially in view of the fact that plaintiff's contemplated development of its property would envision a substantial increase in the use of water over that required by the modest facilities of the Kiwanis Club's camp." 9 Ill. App. 3d 338, 342, 292 N.E.2d 164, 167.

Although the law is well settled that a municipality is under no obligation to supply nonresidents with water in the absence of contractual undertakings, our research reveals no case in this jurisdiction that deals precisely with the problem here: whether a municipality which acquires a functioning water company outside its corporate limits assumes the absolute duty to supply all potential customers within the previously served area. We, therefore, are compelled to examine other authority.

■■ McQuillan, in his treatise on Municipal Corporations, has recognized that a cause of action by nonresidents may exist against a municipality if it acquires a company which was bound to serve customers prior to the sale. The rule is stated as follows:

> "Where the municipality purchases the plant of a private company, it acts thereafter in a proprietary capacity in carrying on the

> obligations of the quasi-public company, and is under the obligation and possesses the rights of such company. * * * A municipality purchasing a private plant becomes bound to supply persons outside the city limits where the private company was burdened with such duty." (12 McQuillan on Municipal Corporations §35.35c (3d ed. 1970).)

Likewise, this rule is recognized in 56 Am. Jur. 2d *Municipal Corporations* §568 (1971) in similar fashion:

> "A municipal corporation empowered to purchase an existing public utility plant serving territory with and without the corporate limits should, it has been held, step into the shoes of the public utility and continue to furnish service not merely to inhabitants within the corporate limits, but to people outside the corporation formerly served by the utility. * * * In the absence of express constitutional or legislative regulations, it is generally held that a municipal corporation, in conducting extraterritorial activities such as public utilities, is subject to the condition in force within the outside territory in which it acts."

■■ This rule was obviously designed to protect people being served by a public utility from being arbitrarily denied such service by a municipality that is only interested in the value of the acquired company. Invocation of this rule, however, depends upon the relationship between the nonresidents and the original facility. Obviously, if no obligation to supply water exists in the first instance, a municipality that purchases its extraterritorial predecessor assumes no greater duties. Thus, the resolution of this case turns upon the duties Northfield owed to the property owners in the area it served.

■■■ Prior to its purchase by Glenview, Northfield, an investor-owned public utility, had been issued a certificate of convenience and necessity (CCN) by the Illinois Commerce Commission (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 56), and was furnishing water to consumers in an area upon which plaintiffs' undeveloped property was located. A public utility may not operate in an area unless it obtains a CCN, which certifies that public convenience and necessity require the transaction of such business. (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 56.) One of the chief purposes of requiring a CCN is to prevent the unnecessary duplication of facilities and to protect the public from inadequate service and higher rates resulting from such duplication, while simultaneously protecting a utility against indiscriminate or ruinous competition. (*Chicago & West Town Rys., Inc. v. Illinois Commerce Com.* (1943), 383 Ill. 20, 48 N.E.2d 320.) A CCN has been deemed a license, or mere permission to do certain acts within a specified period. (*Chicago Rys. Co. v. The Commerce Com. ex rel. The Chicago Motor Coach Co.* (1929), 336 Ill. 51, 167 N.E. 840.) Yet, every

public utility is required, upon reasonable notice, to furnish to all persons, "who may apply therefor and be reasonably entitled thereto," suitable facilities and service, without discrimination and delay. (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 38.) Therefore, it is evident that a public utility has a duty to serve customers in its area if, upon application, they are deemed to be reasonably entitled to such service. We also note that municipalities, though specifically exempt from regulation as a "public utility" (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 10.3(1)), are also required by common law duty to serve all of their customers without unreasonable discrimination in rates or matter of service. *Austin View Civil Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256.

■■ Turning to the complaint in the instant matter, we find no allegations that plaintiffs were being served by Northfield prior to its purchase, or that they had or would have suitable facilities for receiving such services. Moreover, there is no averment that plaintiffs ever applied to Northfield for water service or that Northfield would have been capable of providing it with service if it had so applied. In the absence of any allegation upon which we can conclude that plaintiffs would have been reasonably entitled to water service from Northfield, there is no basis for concluding that its successor, Glenview, assumed such duties. In sum, engrafting upon Glenview a duty to serve plaintiffs' property is unwarranted since it has plead no legal right to it. We will not speculate as to whether either Northfield or Glenview had the capacity to furnish plaintiff's property with water, since no allegations have been presented showing that they received such service in the past or that it was feasible to so furnish them in the future.

Cases cited by plaintiffs from other jurisdictions in support of their position render them no aid. Each is factually dissimilar to the present case and merits no discussion.

Plaintiffs next contend that Glenview is estopped from denying an obligation to supply them with water in view of "numerous representations" it made at public hearings before IDOT to obtain an increase in its allocation of Lake Michigan water.

■■ Two essential elements are prerequisites to invoking the doctrine of equitable estoppel against a municipality: (1) an affirmative act on the part of the municipality, and (2) the inducement of substantial reliance on the affirmative act. (*Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17.) Plaintiffs' complaint alleges that the "affirmative act" by Glenview which induced their reliance was its representation at the IDOT hearings that it was in the process of acquiring Northfield and that it would be responsible for providing water to all portions of the company's certificated area. After carefully reviewing the complaint and exhibits furnished to us by plaintiffs, we believe that the

representations made by Glenview are insufficient as a matter of law to establish a cause of action for relief under an equitable estoppel theory. Glenview never stated that it would supply water to plaintiffs' property. It is undisputed that plaintiffs were not receiving service from Northfield at the time of the IDOT hearings, and that no application had been made to the water company for such service. Further, Glenview's request to IDOT for water did not include an estimate for a supply sufficient to furnish plaintiffs with water; it only contemplated a quantity for developments "already approved and under construction." The water allocations received were in compliance with these requests. Based upon these facts, we hold that there were no "affirmative acts" by Glenview sufficient to induce plaintiffs' reliance in expending money to develop their property.

Plaintiffs also contend that Glenview, by its ordinance requiring annexation and conformance to its land use plans, violated the antitrust prohibitions of section 3 of the Illinois Antitrust Act (Ill. Rev. Stat. 1977, ch. 38, par. 60—3).

Section 3 of the Illinois Antitrust Act provides in relevant part as follows:

> "Every person shall be deemed to have committed a violation of this Act who shall:
>
> ✴ ✴ ✴
>
> (3) Establish, maintain, use or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce." (Ill. Rev. Stat. 1977, ch. 38, par. 60—3(3).)

Plaintiffs' complaint alleges that Glenview violated section 3 when it acquired Northfield "for the purpose of limiting the supply of water." The complaint further states that this purchase "has the effect of controlling and limiting the sale of water to persons outside the corporate limits of said Village," and that this conduct established a monopoly in the water supply business.

■■ This contention is completely without merit, since the complaint alleges no facts to support a conclusion that Glenview violated section 3 of the Illinois Antitrust Act (Ill. Rev. Stat. 1977, ch. 38, par. 60—1 *et seq.*). First, the complaint reveals that Glenview refused service to plaintiffs' property. Having no desire to even serve plaintiffs' property, it can hardly be asserted that Glenview sought monopoly control over the water supply business in the area. Second, there are no facts establishing that Glenview attempted to maintain this alleged monopoly power over "any substantial part of trade or commerce of this State," as required by section 3. Rather,

the alleged violations occurred only in a single, isolated, unincorporated area outside Glenview. Finally, there were no facts set forth in the complaint showing that Glenview attempted to "exclude competition" or "control, fix or maintain" prices in the area.

Plaintiffs also argue that Glenview's conduct is actionable since its ordinance ties a collateral product (*i.e.*, annexation) to the delivery of a regulated product (*i.e.*, water).

■■ ■ A tying arrangement is defined as an agreement by a party to sell one product, but only on the condition that the buyer also purchase a different product. (*Luster v. Jones* (1979), 70 Ill. App. 3d 1019, 388 N.E.2d 1029.) Such arrangements are *per se* illegal when,

> "* * * a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected." (*Northern Pacific Ry. Co. v. United States* (1958), 356 U.S. 1, 6, 2 L. Ed. 2d 545, 550, 78 S. Ct. 514, 518.)

Tying arrangements are not specifically addressed by the Illinois Antitrust Act. Nevertheless, they are embraced under subsection (2) of section 3 of the Act if, tested by the "rule of reason," they are found to be injurious to competition. (Ill. Ann. Stat., ch. 38, par. 60—3, Historical and Practice Notes, at 460 (Smith-Hurd 1977).) Under the rule of reason, the court must consider the actor's purpose in entering into the arrangement, the nature of the conduct, the effect on the industry and the competitive climate in the industry. *Blake v. H-F Group Multiple Listing Service* (1976), 36 Ill. App. 3d 730, 345 N.E.2d 18.

■■ In the instant case, we initially note that plaintiffs' complaint fails to specifically allege that Glenview's conduct constitutes a "tying arrangement." The first mention of this particular theory is in plaintiffs' brief on appeal. Moreover, there is no explanation offered as to how this arrangement is injurious to competition. In any event, it is fundamental that tying arrangements contemplate an appreciable restraint on free competition in the tied product. In this case, the "tied product" is Glenview's annexation requirements. However, Glenview, as a municipality, is not competitively engaged in the market place for purposes of selling "annexation" as if it were a product or service. Indeed, there are no allegations that Glenview attempted to prevent "competing" municipalities from annexing the subject property by exerting leverage in the water supply business. Glenview has consistently maintained that it does not desire to provide water to plaintiffs' property. However, it will do so if, by annexation, it can compel plaintiffs to develop their land in conformance with Glenview's comprehensive land plan. Based upon the scenario, it is our opinion

264

that Glenview's alleged "tying arrangement" neither had the purpose nor the effect of suppressing competition in the market. Therefore, we find no violations of our State antitrust laws.

Plaintiffs' last contention is that count III of its complaint, requesting that IDOT be enjoined from allocating any additional water to Glenview, was improperly dismissed by the trial court. We disagree.

■■ In essence, count III requests that Glenview be penalized by depriving it of water, since it has chosen not to serve the subject property. However, even if injunctive relief were granted plaintiffs, it would not benefit them or bring water to their development. Injunctive relief is properly refused where it is unnecessary and of no benefit to plaintiff. (See, *e.g., Elliott v. Nordlof* (1967), 83 Ill. App. 2d 279, 227 N.E.2d 547.) Consequently, the trial court's dismissal of count III was proper.

For the reasons stated, the judgment of the circuit court is hereby affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.