**LaSALLE NATIONAL BANK, Trustee under Trust No. 44264, et al., Plaintiffs,**

v.

**COUNTY OF LAKE, et al., Defendants.**

No. 81 C 3160.

United States District Court, N.D. Illinois, E.D.

Jan. 12, 1984.

As Amended Feb. 6, 1984.

Bruce S. Sperling, Paul E. Slater, Mitchell H. Macknin, Sperling, Slater & Spitz, P.C., Chicago, Ill., for plaintiffs.

Thomas H. Neuckranz, Jacobs, Williams & Montgomery Ltd., Chicago, Ill., for Lake County.

Kevin J. Rielley, Clifford L. Weaver, Ross Hardies, O'Keefe Babcock & Parsons, Charles L. Sieman, Clifford L. Weaver, William Freivogel, Robert Newman, Piper Rothschild, Burke, Bosselman, Freivogel, Weaver Glaves & Ryan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an action brought under 42 U.S.C. § 1983, the federal antitrust laws, various state laws and various common law tort theories. Pending before the court are defendants' motions to dismiss and for attorneys' fees relating to a previous motion for disqualification. We deny the motion to dismiss, but with leave to amend and with-

out prejudice as to certain parts. We also deny the motion for attorneys' fees.

## FACTS

On a motion to dismiss, we assume the facts as stated by plaintiffs.

Plaintiffs are the owners of certain land in the Village of Round Lake Park, Illinois. Defendants are the County of Lake, in which Round Lake is located; the Village of Grayslake, a municipality which adjoins Round Lake; and various officials of Lake County and Grayslake.

Plaintiffs allege that Lake County and Grayslake engaged in a conspiracy to deny sewer service to their land for the purpose of stopping development of the land. According to the complaint, Lake County and Grayslake entered into an agreement whereby Lake County ceded to Grayslake its authority to approve sewer connections, giving Grayslake a "sphere of influence" in which it had veto power over sewer connections in areas beyond its borders. The complaint alleges that a new sewer system was built, with federal assistance, to service the entire region and that plaintiffs had granted the County easements over their land for the sewer system with the understanding that their land would be serviced when developed. Plaintiffs allege, however, that when they applied for connection to the system Grayslake, exercising its veto power, turned them down. They allege that this denial was without the opportunity to be heard or to appeal and was in spite of the fact that their application for sewer service did not contemplate an undue strain on the sewage treatment plant or the interceptor system. According to plaintiffs, Grayslake and Lake County had made public their intent to prevent development of plaintiffs' land, if necessary by vetoing the sewer connection application.

## DISCUSSION

### A. Motion to Dismiss

At oral argument, the parties discussed three grounds for dismissing various counts of the complaint.[1] We consider those grounds in turn.

### (1) Procedural Due Process (Count I)

■ Defendants argue that under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), plaintiffs were not denied procedural due process[2] because there existed adequate state remedies for plaintiffs to challenge the deprivation of their property. We disagree.

Following the oral argument, by minute order we asked defendants to tell us what state procedures in this case provided plaintiffs with an adequate remedy. In their response, defendants merely cited *Parratt v. Taylor* and other court cases. Accordingly, we again asked defendants to tell us specifically what state remedies were available *in our case* which would make it fit within *Parratt* and its progeny. Defendants responded by citing generally to the entire Illinois Municipal Code, the entire Illinois Code of Civil Procedure, the entire set of Rules of the Illinois Supreme Court, and a single statute which authorizes county boards to take certain actions but which does not provide any mechanism for challenging such actions.

Defendants' argument appears to be that the mere existence of the court system in the State of Illinois means that someone who is deprived of property by the state has sufficient remedies available to satisfy the Fourteenth Amendment's due process guarantee. We reject this argument on three grounds.

### (a) The feasibility of pre-deprivation procedures

■ First, we doubt whether *Parratt* even applies to this case, since plaintiffs

---

1. Although defendants' written motion to dismiss included other grounds, those grounds have not been argued or briefed. We therefore express no opinion as to those grounds, which defendants may renew if they choose.

2. To the extent that defendants also seek to dismiss plaintiffs' substantive due process claims on *Parratt* grounds, we deny the motion. *See Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983) (*Parratt* does not apply to violations of substantive constitutional rights).

here allege that the property deprivation occurred pursuant to established state procedures rather than pursuant to a random, unauthorized act by a state employee for which a pre-deprivation remedy would be unfeasible.[3] *See Parratt*, 451 U.S. at 543, 101 S.Ct. at 1916; *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (*Parratt* does not reach a situation where plaintiff alleges that he was deprived of property pursuant to established state procedures). Therefore, assuming that *Parratt* does not apply to our case, defendants' citation to post-deprivation remedies is unavailing because such post-deprivation remedies are not adequate. We would deny this part of the motion to dismiss on this ground alone.

**(b) General state procedures not adequate**

■ Even assuming, *arguendo*, that some post-deprivation remedy could be adequate in our case, we find that the general state procedures cited by defendants here are not adequate. We have searched for, but have not found, a single case which holds that the mere existence of a state court system satisfies the *Parratt* test. In cases where post-deprivation procedures have been held to be adequate, those procedures involved either some specific state statute directly authorizing an appeal or a damages remedy for the deprivation complained of. For example, in *Parratt* there was a state tort remedy for the depriva-

tion. In *Brown v. Brienen*, 722 F.2d 360 (7th Cir.1983), a breach of contract remedy was available. In *Albery v. Reddig*, 718 F.2d 245 (7th Cir.1983), an appeal from the zoning decision was available. In *Creative Environments, Inc. v. Eastabrook*, 680 F.2d 822 (1st Cir.1982), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1983), adequate state law remedies existed to vindicate plaintiff's claims. Here, though, defendants have cited no statutory right directly to appeal the challenged decisions,[4] and neither have they cited a state tort remedy by which plaintiffs can be granted damages for their property deprivation.

Accepting the argument that the mere existence of a state court system is a sufficient remedy for the deprivation of property would be to do away with the *Parratt* analysis altogether. After all, each of the fifty states has a court system; therefore, the *Parratt* Court must have been looking for some more specific procedural remedy. In many circumstances, the mere existence of a state court system would not be of much help to a person deprived of property because local governmental units have traditionally been immune from damages in common law tort suits for activities undertaken as a governmental function or pursuant to their discretionary authority, *see generally, Owen v. City of Independence, Missouri*, 445 U.S. 622, 644–49, 100 S.Ct. 1398, 1412–14, 63 L.Ed.2d 673 (1980), unless the state has acted to remove that

---

**3.** Defendants have not argued that an adequate pre-deprivation remedy was available to plaintiffs. Apparently, plaintiffs had no statutory right to notice or a hearing before their permit request was turned down. *Compare* Ill.Rev. Stat. ch. 24, § 11–13–12 (parties appealing to municipal zoning board of appeals have right to notice and to be heard).

**4.** Unlike here, the state *does* provide a specific right to judicial review of land use decisions in other contexts. *See, e.g.*, Ill.Rev.Stat. ch. 34, § 3157 (all final decisions of county zoning boards of appeals subject to judicial review under the Administrative Review Law); Ill.Rev. Stat. ch. 24, § 11–13–13 (all final decisions of municipal zoning boards of appeal subject to judicial review under the Administrative Review Law). However, the Administrative Review

Law expressly is not applicable except where its provisions have been specifically incorporated into a particular statute, *see* Ill.Rev.Stat. ch. 110, § 3–102, and defendants have not cited any provision that makes the Administrative Review Law applicable to the actions challenged here.

One arguably relevant statutory provision not cited by defendants is Ill.Rev.Stat. ch. 34, §§ 605 and 606. Those sections provide that county boards shall determine the validity of claims against the county and that such decisions of county boards are subject to judicial review under the Administrative Review Law. However, the provisions apply to claims to recover for "services charged ... or articles furnished," Ill.Rev.Stat. ch. 34, § 605, rather than claims to resolve a dispute over an administrative ruling.

immunity, *id.* And as we conclude below, the right to post-deprivation injunctive relief without damages does not satisfy *Parratt.*

### (c) Declaratory relief insufficient

■ Notwithstanding the fact that out of the hundreds of statutory sections cited generally by defendants, they did not single out a specific remedy under Illinois law for a person deprived of property by a local governmental unit, one of the sections, Ill. Rev.Stat. ch. 110, § 2–701, does authorize limited relief. However, we hold that that section, when read against the backdrop of other Illinois law, does not provide sufficient process to satisfy *Parratt.*

In Illinois, sovereign immunity has been abolished, except to the extent that the General Assembly provides otherwise. 1970 Illinois Constitution, Art. 13, § 4. The General Assembly has immunized both local governmental units, *see* Ill.Rev.Stat. ch. 85, § 2–104, and local governmental officials, *see* Ill.Rev.Stat. ch. 85, § 2–206, from tort liability for damages under state law for injuries caused by the failure or refusal to issue a permit where such issuance is discretionary.[5] The provision we cited above, Ill.Rev.Stat. ch. 110, § 2–701, provides only for declaratory relief against a local governmental unit which acts contrary to law. Therefore, plaintiffs here could sue for declaratory relief but not damages. *See U-Haul Co. of Chicago Metroplex v. Town of Cicero,* 87 Ill.App.3d 915, 43 Ill.Dec. 286, 410 N.E.2d 286 (1st Dist.1980). However, merely providing an opportunity for declaratory relief to a citizen deprived of property does not satisfy

*Parratt* because such injunctive relief does not "*fully compensat[e]* [him] for the property loss he suffered." *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917, emphasis supplied. To satisfy *Parratt,* the state procedure must be one which can "make the complainant whole." *Logan, supra,* 455 U.S. at 437, 102 S.Ct. at 1158. *See also Brown v. Brienen,* 722 F.2d 360 at 365 (7th Cir.1983). The Court in *Parratt* did not hold that the state could satisfy due process merely by giving the prisoner his hobby kit some months later; it is apparent that the Court held that due process was satisfied because the state had a tort claims statute by which the prisoner could get *damages* for being deprived of the hobby kit.

Strong policy considerations support our conclusion that *Parratt* is not satisfied here. Merely giving a deprived citizen injunctive relief but not compensating him for the damages caused by the deprivation would be a disincentive to governmental officials to obey the law. Under such a system, a governmental official could simply do as he pleases and gamble that the deprived person will not sue or will not prevail in suit. The worst that could happen—if the citizen prevails in a suit—would be that the governmental official would have to go back and do what should have been done in the first place. The governmental official would have lost nothing, but the citizen would not be compensated for the time during which he was deprived of property. This does not seem to us to be the process that is due an injured party

---

5. Although *Brown v. Brienen,* 722 F.2d 360 (7th Cir.1983), did hold that a county could be sued, that case involved a breach of contract suit, which the Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85, § 1–101 *et seq.,* expressly excludes from its immunizing provisions. *See id.,* § 2–101(a). In our case, however, the property right of which plaintiffs claim they were deprived without due process did not flow from a contract between plaintiffs and any of the defendants. Rather, plaintiffs allege that their constitutionally protected property right was "to develop their property in accordance with the land uses

agreed to by Round Lake Park and plaintiffs." Amended Complaint, ¶ 55. Although plaintiffs do allege in other parts of the complaint that Lake County was obligated to the federal government to provide sewer service to their property, the plaintiffs were not a party to any such agreement and therefore could not sue to enforce a breach of it. Plaintiffs raise the Lake County-federal government agreement not in an attempt to enforce the agreement but rather as evidence that the denial of sewer services was arbitrary and done for the purpose of suppressing competition.

under *Parratt*, the Fifth and Fourteenth Amendments, or § 1983.

Accordingly, we deny defendants' motion to dismiss Count I.

### (2) Legislative Immunity

 Defendants argue that the county board members and village trustees who are sued in their individual capacities are immune from damages because they were acting as legislators.[6] *Reed v. Village of Shorewood*, 704 F.2d 943, 952–53 (7th Cir. 1983), does hold that local officials are absolutely immune from liability for actions taken in a legislative capacity. To the extent that the amended complaint here seeks to hold any of the defendants personally liable for actions taken in a legislative capacity, we believe the motion to dismiss has merit. However, it appears that not all of the alleged actions were taken in a legislative capacity. For example, the decision by the Lake County Board and the Village of Grayslake to give the Village of Grayslake a veto over sewer applications within Grayslake's sphere of influence appears to have been legislative, because it was a decision of general application. However, the decision by the Village of Grayslake to deny the specific application of plaintiffs appears to have been an administrative action, since the trustees were then considering a specific proposal by a specific group and doing so in their capacity as administrators of an already-passed law. While

we believe that defendants' argument has some merit, we would not want to make a dispositive ruling on which actions were legislative and which were administrative without briefing by the parties. Accordingly, we deny this part of the motion to dismiss without prejudice. Defendants may renew this motion but should discuss in any renewed motion why each particular action should be considered legislative.[7]

### (3) Antitrust Immunity

 Plaintiffs allege that defendants used their governmental powers to gain a competitive advantage for themselves in the market for customers of municipal services and to place plaintiffs at a competitive disadvantage in the market for real estate development. Specifically, plaintiffs allege that defendants conspired to deny plaintiffs permission to hook into the Lake County sewer system even though no other sewer service was available to plaintiffs and even though the Lake County system was capable of handling sewage from plaintiffs' land. Plaintiffs allege that this action was taken to stop development of their land, which had been annexed by the Village of Round Lake over the objections of the Village of Grayslake, which did not want the land to be developed.

Defendants argue that they are immune from liability under the antitrust laws under the doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943),

---

**6.** Not all of the individual defendants were sued in their individual capacities. The complaint names the Lake County Board members (Geary, Bell, Anderson, Gantar, Strenger, Lea, Sabato, Briddle, Snow, Shorts, Beter, Rhodes, Gerst, Amendola, Bacall, Harman, Hanrahan, Balen, Daniels, Miholic, Pekol, Serdar, Morrison, Payne, Dandee, Toholik, Fields, Litwiler, Miller, Priscilla Richardson, Thomas and Graham) both personally and in their official capacities. However, the complaint does not name the Grayslake trustees (Christians, Lucas, Behm, Grant, Smith, Winters, Anderson, Chalmers, Clark, Barbara Richardson and Seidenberg) or the Grayslake mayor (Schroeder) in one capacity or another. We assume that the Grayslake officials are named in their official capacities and that therefore the immunity issue does not apply to them, since a suit against a public official in his official capacity is really nothing

more than a suit against the governing body itself, *see Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978), which enjoys no immunity, *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

**7.** To the extent that the county board members and village trustees were acting in an administrative rather than legislative capacity, they have only qualified immunity, *see, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Qualified immunity is an affirmative defense which must be pleaded by the particular defendant and thus is not an appropriate ground to support a motion to dismiss. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

as applied to units of local government in *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), and *Community Communications Co., Inc. v. City of Boulder, Colorado*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982).

We have recently explored the field of municipal antitrust immunity in great detail in *Vickery Manor Service Corporation v. Village of Mundelein*, 575 F.Supp. 996 (1983). Rather than cover this ground again here, we direct attention to that decision and adopt its analysis for our purposes.

Based on the *Vickery Manor* analysis, we find that there is not a "clearly articulated and affirmatively expressed state policy," *City of Boulder, supra*, 455 U.S. at 52, 102 S.Ct. at 841, to permit the actions alleged in the complaint here; nor can such actions be said to be a "reasonable or foreseeable consequence of engaging in the authorized activity." *Town of Hallie v. City of Eau Claire*, 700 F.2d 376, 381 (7th Cir.1983). We have studied in detail the authorities cited by defendants [8] in support of their immunity argument and do not find them convincing.[9] We do not find in any of these statutes and regulations a legislative intent to permit a local governmental unit to use its powers in the sewage treatment field simply for the purpose of stopping the development of land. Plaintiffs allege that defendants obligated them-

selves to the federal government to provide sewer service to plaintiffs' land; that plaintiffs granted an easement over their land for the sewer lines with the understanding that their land would be served by the sewer system; but that defendants then used their monopoly power over sewage treatment to block plaintiffs' land development. Nothing in the statutes or regulations cited by defendants authorizes or even contemplates that defendants' power could be used to such an end. It is one thing to say that defendants were authorized under state law to control sewage treatment in their region. But "even a lawful monopolist may be subject to antitrust restraints when it seeks to extend or exploit its monopoly in a manner not contemplated by its authorization." *City of Lafayette, supra*, 435 U.S. at 389, 98 S.Ct. at 1123. Certainly the Regional Transportation Authority, which is authorized to have a monopoly over public transportation in its region, could not refuse to provide service to a particular part of the region simply for the purpose of driving a particular individual or group out of business or lowering property values. Nor have these defendants been authorized to wield their power in the manner alleged here.

Accordingly, the motion to dismiss the antitrust counts of the complaint is denied.

## B. Attorneys' Fees

██ Also pending is a motion by defendants for attorneys' fees incurred in their

---

8. Those authorities include: The Illinois Antitrust Local Government Act, P.A. 83–929; Ill. Rev.Stat. ch. 34, § 3111; Ill.Rev.Stat. ch. 24, §§ 11–141–2, 11–141–7, 11–146–1, 11–147–4, and 11–149–1; Ill.Rev.Stat. ch. 111½, § 1002; Ill. Rev.Stat. ch. 127, §§ 454(a), 743, and 745; Ill. Const. Art. VII, sec. 10(a); 33 U.S.C. §§ 1251(a)(5), 1281(c), 1284(a), and 1288; Sen. Rep. 92–414, 92d Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Ad.News 1972, 3668, 3674–77, 3690–3706; 40 C.F.R. §§ 35.917–6, 35.917–7; *Unity Ventures v. County of Lake*, No. 81 C 2745 (N.D.Ill. Feb. 9, 1983); *Amalgamated Trust & Savings Bank v. Village of Glenview*, 98 Ill. App.3d 254, 53 Ill.Dec. 426, 423 N.E.2d 1230 (1st Dist.1981); State of Illinois Grants for Sewage Treatment Works, General Conditions, 5, 8, 15, 33, 35 (1976); and Northeastern Illinois Plan-

ning Commission, Regional Wastewater Plan (9th revision 1976).

We note that under *City of Boulder*, state court opinions holding that a particular action is authorized but not considering federal antitrust implications will be given little or no weight in the "state action immunity" analysis. 455 U.S. at 52, n. 15, 102 S.Ct. at 841, n. 15. Also, we fail to see how federal statutes, reports of Congressional committees or planning documents of state administrative agencies can be evidence of the intent of the Illinois General Assembly.

9. One statute cited by defendants, P.A. 83–929, arguably reaches the situation alleged here, but that statute was passed long after the events which are the subject of this complaint.

successful motion to disqualify plaintiffs' original attorneys. We have read the memoranda submitted by the parties and reviewed our own recollection of the arguments made by the parties at the time of the disqualification motion. We have also considered the subsequent opinion of the Court of Appeals on the motion. *See La-Salle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir.1983). We have concluded that plaintiffs' arguments in opposition to the motion to disqualify were not sufficiently unreasonable or vexatious to warrant an award of attorneys' fees under 28 U.S.C. § 1927 or the court's inherent power under *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

## CONCLUSION

For the reasons stated, we deny defendants' motion to dismiss, except that with regard to the specific question of legislative immunity and the grounds stated in the original motion but not disposed of in this opinion, our denial of the motion is without prejudice and with leave to renew. Also, we deny defendants' pending motion for attorneys' fees.