CITIZENS UNITED FOR RESPONSIBLE ENERGY DEVELOPMENT, INC. (CURED), Petitioner, v. ILLINOIS COMMERCE COMMISSION et al., Respondents.

Fifth District   No. 5—95—0564

Opinion filed December 5, 1996.

WELCH, J., dissenting.

Edward G. Maag, of Belleville, and John Long, of Troy, for petitioner.

Tobias G. Barry, of Aplington, Kaufman, McClintock, Steele & Barry, Ltd., of La Salle, and Douglas G. Brown and Troy A. Fodor, both of Douglas G. Brown, P.C., of Springfield, for respondent Illinois Municipal Electric Agency.

James E. Ryan, Attorney General, of Chicago (John P. Kelliher, Special Assistant Attorney General, of counsel), for respondent Illinois Commerce Commission.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Citizens United for Responsible Energy Development, Inc. (CURED), appeals to this court for statutory direct review pursuant to Supreme Court Rule 335 (155 Ill. 2d R. 335) and section 3—113 of the Code of Civil Procedure (735 ILCS 5/3—113 (West 1994)) of an order of respondent Illinois Commerce Commission (Commission) issuing a certificate of public convenience and necessity to respondent Illinois Municipal Electric Agency (Agency), for the construction of a 138-kilovolt electric transmission line near Aviston, commonly referred to as the Aviston-Highland line, and related substation facilities, as well as the interconnection of the transmission line with an electric substation owned by Illinois Power Company (Illinois Power), and CURED also appeals for review of an order denying CURED's petition for rehearing. CURED also filed this appeal pursuant to section 10—201 of the Public Utilities Act (Act) (220 ILCS 5/10—201 (West 1994)). In this cause, CURED contends that: (1) the Commission's staff was derelict by not investigating or testifying about the issue of least-cost means, which caused the proceedings in this case to be in violation of section 8—406(b) of the Act (220 ILCS 5/8—406(b) (West 1994)) and the Commission's own policy and rules and practice; (2) the Commission's finding that "construction of the Aviston-Highland line and new substation is the least-cost means of satisfying the service needs of Highland" is not supported by substantial evidence based on the entire record; (3) section 4—7(b) of the Agency's contract with Illinois Power, in which the Agency obtained Illinois Power's silence at the certificate proceeding, was against public policy and so tainted the certificate proceedings as to require that the provision be voided and a new certificate proceeding be held; (4) because the use of Illinois Power's existing East Collinsville-Highland right-of-way as a potential route for a new 138-kilovolt line was not studied by the Commission's staff, the Agency, or Illinois Power, insufficient evidence existed in the record to permit the Commission to decide whether the use of that right-of-way would be both feasible and preferable to the proposed Aviston-Highland line; and (5) the Commission, pursuant to section 8—502 of the Act (220 ILCS 5/8—502 (West 1994)), has the authority to require Illinois Power to share its East Collinsville-Highland right-of-way with the Agency. We reverse and remand with directions.

## FACTS

On October 18, 1993, the Agency filed a verified petition with the Commission, seeking approval under section 11—119.1—10 of the Illinois Joint Municipal Electric Power Act (65 ILCS 5/11—119.1—10

(West 1994)) for the construction of approximately 13 miles of 138-kilovolt line from Illinois Power's Aviston substation in Clinton County to a new substation south of Highland to be built by the Agency. The new substation would transform power from 138 kilovolt to 34.5 kilovolt. The petition named Illinois Power as a respondent, since the proposed transmission line requires interconnection with Illinois Power's Aviston substation. Petitions to intervene in this proceeding were filed by CURED, a not-for-profit corporation whose members are landowners who would be affected by the proposed transmission line, along with the Illinois Department of Agriculture, the Village of Aviston, and numerous potentially affected landowners. CURED is the only intervenor taking part in this appeal.

The Agency's petition was an extension of its June 1, 1990, power-sales contract with the City of Highland. The contract requires the Agency to provide all electricity needed for the operation of Highland's electric utility during the 15-year term of the contract. On October 15, 1990, the Agency and Highland entered into an addendum to that contract in which the Agency agreed to construct facilities rated at 138 kilovolt to serve Highland within five years of the effective date of the contract, subject to obtaining regulatory approval. The Agency and Highland agreed that the Agency would own the transmission facilities to be constructed. The Agency also agreed to provide the funds for the total cost of the project, with reimbursement in part by Highland. The agreement specifically provides that the Agency's unreimbursed cost for the project is one-half the total cost, but in *no* event more than $3 million. The balance of the total cost is to be repaid by Highland to the Agency through rates over the 15-year life of the power-sales contract.

In order to satisfy the agreement and meet Highland's need for additional transmission capacity, the Agency proposed construction of the Aviston-Highland line. Estimated cost of the 138-kilovolt transmission line over the Agency's proposed route was $3,280,651. Estimated cost of the new Agency substation was $2,684,500. In order to connect the substation with the existing delivery point, Highland will have to construct, at its own expense, $1^3/_4$ miles of 34.5-kilovolt electric transmission line. This added expense was not taken into account in the Agency's estimated cost of the project.

As stated, the Agency named Illinois Power as a respondent in its petition. Illinois Power filed an answer to the petition on November 9, 1993. On January 10, 1994, the Agency and Illinois Power entered into a coordination-and-interchange agreement. Section 4.7 of that agreement sets forth the responsibilities of the Agency and Illinois Power with respect to the initial transmission facilities

required to provide full transmission from the Aviston-Highland line and provides, *inter alia*, as follows: (1) the Agency and Highland shall complete the 138-kilovolt line from Illinois Power's Aviston substation to Highland at the Agency's and Highland's costs; (2) Illinois Power will not intervene in support or opposition at the certificate proceeding before the Commission relating to the line to be built for the City of Highland, nor shall Illinois Power initiate any other action or proceeding with the purpose or effect of interfering with the Agency's and Highland's construction of the Aviston-Highland 138-kilovolt line; (3) the parties shall cooperate fully with each other in planning and constructing the proposed 138-kilovolt line and associated substation facilities; (4) Illinois Power shall be responsible for the operation of the Aviston-Highland 138-kilovolt line; (5) the Agency shall be responsible for the cost of maintenance of the line, provided that in the event that Illinois Power taps the line in order to service its own load, Illinois Power shall subsequently assume responsibility for the cost of maintaining the entire line; and (6) Illinois Power shall meet Highland's full firm transmission requirements once the Aviston-Highland 138-kilovolt line is completed by the Agency/Highland. Pursuant to provision (2) recited above, Illinois Power neither supported nor opposed the Agency's petition but remained neutral throughout the proceedings.

This matter was initially called for hearing on March 4, 1994, in front of a hearing examiner. Eight additional days of testimony were taken between April 1994 and August 1994. During the hearings, no one disputed Highland's need for additional power. The Agency prepared a long-term forecast for peak demand and energy consumption, which was not challenged by any party. The parties that participated in the hearings before the Commission were the Agency, the Commission's staff, the Department of Agriculture, Illinois Power, the Village of Aviston, CURED, and the individual property owners.

Testimony from those hearings shows that the Agency considered two alternative transmission lines but chose the Aviston-Highland route as the best route. The Commission's staff supported construction of the Aviston-Highland line but recommended a revision to the Agency's proposed final route. The staff took the position that the Agency was not required to prove that its proposed Aviston-Highland transmission line represented the least-cost means of satisfying the service needs of customers. In fact, the staff did not consider the issue of least-cost means in evaluating the Agency's proposal. The staff attorney instructed the staff economist, Gunnard Kluck, *not* to consider the issue of least-cost means in evaluating the Agency's proposal. Kluck followed that order.

CURED took the position that while there was a need to transmit additional electrical power to Highland, construction of the transmission line as proposed by the Agency is not convenient, not necessary, and not the least-cost means. CURED proposed two alternative routes: first, a line from Lebanon Horner Park to Highland, and second, a line from the East Collinsville substation to Highland over Illinois Power's existing right-of-way. The individual landowners who presented evidence supported CURED's position. CURED also contended that the Agency vastly underestimated the cost of the Aviston-Highland line for two reasons: (1) the Agency's estimated cost of land acquisition at $225,000 was ridiculously low; and (2) the Agency's estimate was outdated, since it was estimated in 1990 and never updated.

The Commission agreed with CURED that before it could approve construction of the proposed transmission line, the Agency must demonstrate, *inter alia*, that the proposed construction is the least-cost means of satisfying the service needs of its customers. The Commission then concluded that the Agency's proposed plan to construct a 138-kilovolt line from Aviston to Highland constituted the least-cost means of satisfying the service needs of Highland. The Commission added, "While the final costs of the [Agency's] proposed project may turn out to be higher than the [Agency's] latest cost estimate, there is no evidence indicating that there is a better solution to Highland's power needs at a lesser cost."

On November 14, 1994, CURED filed a motion to reopen evidentiary hearings. Responses to the motion were filed by Illinois Power and the Agency on November 22, 1994, and November 23, 1994, respectively. On December 1, 1994, CURED filed a reply to the Agency's response. On December 14, 1994, the hearing examiner, on his own motion, reopened the record in this proceeding pursuant to the Commission's rules of practice (83 Ill. Adm. Code § 200.870 (1994)) for the purpose of scheduling a hearing to discuss the motion to reopen evidentiary hearings. The motion requested additional hearings on issues pertaining to offers to landowners made by the Agency subsequent to the close of the record. Hearings were subsequently held on December 21, 1994, January 9, 1995, and January 18, 1995. An exhibit prepared by the Agency, which summarized offers made to landowners between September 20, 1994, and October 28, 1994, for easements required on the Agency's proposed route for the 138-kilovolt transmission line, was admitted into evidence, and Kevin L. Wagner, the Agency's manager of engineering, was recalled as a witness to answer questions pertaining to that exhibit. This exhibit showed that offers to landowners for the complete right-of-way of the

line totalled $613,408.50. None of these offers had been accepted. The proposed right-of-way from Aviston to Highland crosses 61 different tracts of land owned by 50 different landowners.

After the hearings were completed, CURED submitted a brief with respect to the hearing officer's proposed order. CURED argued that the Commission had authority under section 8—502 of the Act (220 ILCS 5/8—502 (West 1994)) to require Illinois Power to permit the Agency to share the East Collinsville-Highland right-of-way, for the purpose of overbuilding the existing 34.5-kilovolt line with a 138-kilovolt line. The Commission adopted the hearing examiner's proposed order without alteration. In that order, the Commission concluded that it was not necessary to determine whether section 8—502 of the Act provides the Commission with authority to require Illinois Power to permit the Agency to share the East Collinsville-Highland right-of-way in light of sufficient grounds in the record to reject this alternative. The bases for rejecting this route, as listed in the Commission's order, include: (1) the Agency indicated that the existing East Collinsville-Highland route does not provide necessary clearance for a 138-kilovolt line; (2) the cost for developing this route would be approximately $6.9 million; and (3) Illinois Power indicated that overbuilding its existing 34.5-kilovolt line from East Collinsville to Highland with a 138-kilovolt line would adversely affect the reliability of its system and service. As previously stated, the Commission's order concluded that the Agency proved that its proposed Aviston-Highland 138-kilovolt electric transmission line represented the least-cost means of satisfying the needs of the Agency's customers. Accordingly, the Commission issued a certificate of public convenience and necessity to the Agency for construction of the proposed line.

CURED filed an application for rehearing on July 6, 1995. The Commission denied that application on July 19, 1995. CURED now appeals from both the Commission's order issuing the certificate of public convenience and necessity and the Commission's order denying CURED's application for rehearing.

## ISSUES

CURED raises five specific contentions in this appeal, the first two concerning the issue of least-cost means. CURED specifically contends that the Commission's staff was derelict by not investigating and not testifying concerning the issue of least-cost means, which caused the proceedings in this case to be in violation of section 8—406(b) of the Act (220 ILCS 5/8—406(b) (West 1992)) and the Commission's own policy and rules of practice. CURED also contends that

the Commission's finding that the Aviston-Highland line is the least-cost-means method of servicing Highland is not supported by substantial evidence. The Agency responds that (1) it did, in fact, prove that the Aviston-Highland route is the least-cost means of meeting Highland's electricity needs and, (2) in any event, the Agency is a municipal corporation and, therefore, it is exempt from the Commission's authority and absolved of the least-cost-means requirement. The Commission, on the other hand, agrees that it was an error for the staff not to testify on the issue of least-cost means, but that such error was not critical, as the staff was not a party to the proceedings before the Commission pursuant to section 200.40 of the Illinois Administrative Code (83 Ill. Adm. Code § 200.40 (1994)), which specifically provides that staff witnesses are not parties. Moreover, the Commission contends that its conclusion that construction of the Aviston-Highland line and the new substation is the least-cost means of satisfying the service needs of Highland is fully supported by the record. After careful consideration, we believe that the least-cost-means requirement is decisive in this case. Because the least-cost-means issue was not fully considered, the order of the Commission must be reversed and the cause must be remanded for further proceedings.

I

■■■ A certificate of public convenience and necessity is issued to prevent unnecessary duplication of facilities and to protect the public from inadequate service and higher rates resulting from such duplication, while simultaneously protecting a utility against indiscriminate or ruinous competition. *Amalgamated Trust & Savings Bank v. Village of Glenview*, 98 Ill. App. 3d 254, 260, 423 N.E.2d 1230, 1234 (1981). What constitutes the public convenience and necessity is within the discretionary powers of the Commission. *Egyptian Transportation System, Inc. v. Louisville & Nashville R.R. Co.*, 321 Ill. 580, 152 N.E. 510 (1926). In reviewing an order of the Commission, courts are limited to a consideration of the questions of whether the Commission acted within its authority, whether it made adequate findings to support its decision, whether the decision was supported by substantial evidence, and whether constitutional rights were infringed by the decision. *Monarch Gas Co. v. Illinois Commerce Comm'n*, 51 Ill. App. 3d 892, 894-95, 366 N.E.2d 945, 947 (1977). In reviewing an order of the Commission, a court must not put itself in the place of the Commission and conduct an independent investigation, nor should it substitute its judgment for that of the Commission. *Produce Terminal Corp. v. Illinois Commerce Comm'n*, 414 Ill.

582, 589, 112 N.E.2d 141, 144 (1953). It is well settled that great weight and deference should be given to the Commission's orders, but such orders can be set aside when it is clearly apparent that they are arbitrary or unreasonable or directly contravene some established rule of law. *Illinois Central R.R. Co. v. Franklin County*, 387 Ill. 301, 56 N.E.2d 775 (1944). The purpose of judicial review of an order of the Commission is to keep the Commission within jurisdictional bounds prescribed by law and also to guard against a violation of any rights guaranteed by the constitution; therefore, courts may reexamine facts and set aside an order of the Commission if evidence in the record shows the order to be without substantial foundation. *Illinois Central R.R. Co. v. Illinois Commerce Comm'n*, 411 Ill. 526, 104 N.E.2d 796 (1952).

■ In the instant case, the Commission concluded that before it could approve the proposed construction, the Agency was required to demonstrate, *inter alia*, that the proposed construction was the least-cost means of satisfying the service needs of its customers. The Commission explained that its conclusion was based on its interpretation of section 11—119.1—10 of the Illinois Joint Municipal Electric Power Act (Power Act) (65 ILCS 5/11—119.1—10 (West 1994)). This section provides that, except as otherwise stated in the Power Act, a municipal power agency may exercise any and all of the powers enumerated in the Power Act, subject to the consent and approval of the Commission, in the same manner and to the same extent as public utilities regulated by the Commission under the Public Utilities Act. Three exceptions are set forth to this requirement for Commission approval, namely: (1) contracts between a municipal power agency and its wholesale customers; (2) the rates to be charged by a municipal power agency to its wholesale customers; and (3) the issuance of bonds by a municipal power agency. 65 ILCS 5/11—119.1—10 (West 1994). The Commission noted that none of these three exceptions applied here. The Commission went on to explain that before a public utility could construct a line as proposed, it would have to obtain a certificate of public convenience and necessity pursuant to section 8—406(b) of the Public Utilities Act. This section specifically provides:

"(b) No public utility shall begin the construction of any new plant, equipment, property or facility which is not in substitution of any existing plant, equipment, property or facility or any extension or alteration thereof or in addition thereto, and which in the case of gas and electric utilities may affect the energy plan of the utility unless and until it shall have obtained from the Commission a certificate that public convenience and necessity require such construction. Whenever after a hearing the Commission

determines that any new construction or the transaction of any business by a public utility will promote the public convenience and is necessary thereto, it shall have the power to issue certificates of public convenience and necessity. The Commission shall determine that proposed construction will promote the public convenience and necessity only if the utility demonstrates: (1) that the proposed construction is necessary to provide adequate, reliable and efficient service to its customers and *is the least-cost means of satisfying the service needs of its customers*; (2) with respect to gas and electric utilities, that the proposed construction is consistent with the most recent energy plan adopted by the Commission for the utility and the State, as updated; (3) that the utility is capable of efficiently managing and supervising the construction process and has taken sufficient action to ensure adequate and efficient construction and supervision thereof; and (4) that the utility is capable of financing the proposed construction without significant adverse financial consequences for the utility or its customers. If the Commission finds that the public convenience and necessity requires a new electric generating facility to be added by the utility, the Commission shall evaluate the proposed construction in comparison with the merits of a facility designed to use Illinois coal in an environmentally acceptable way, and shall consider the economic impact on employment directly or indirectly related to the production of coal in Illinois over the entire period of time affected by the proposed construction or its alternatives." (Emphasis added.) 220 ILCS 5/8—406(b) (West 1994). The Commission explained that since no language in section 11—119.1—10 of the Power Act discharges the Agency from meeting the least-cost-means requirement, least-cost means must be considered.

■ The Agency has provided us with no cases to the contrary, and we believe that the Commission's statutory interpretation in this regard is sound. In its application, however, we find the Commission's conclusion, that construction of the Aviston-Highland line and new substation is the least-cost means of satisfying the service needs of Highland, to be without sufficient basis and substantial foundation, as the question of least-cost means was not even considered by the Commission's staff. The testimony of the Commission's staff economist, Gunnard Kluck, is highly illuminating.

Kluck testified that he was directed from the outset by staff counsel to not even consider the Agency as a fully regulated utility and *not* to address the issue of least-cost means. Kluck specifically stated: "I am aware that there are costs involved but I did not, in my conclusion to accept IMEA's proposal, consider the cost ***. Let me answer the question this way. There is—in regard to section

8—406(b)(1) the only issue that I eliminated or did not consider was the cost." The record does not explain why least-cost means was ignored and yet other requirements set forth in section 8—406(b) were investigated and considered by the staff in deciding to accept the Agency's proposal. Moreover, Kluck testified that he was presently involved in three other proceedings concerning certificates of public convenience and necessity and in each of those other proceedings he evaluated or considered least-cost-means issues. Because the issue of least-cost means was not even considered by the staff, we find that the Commission's determination, that the Agency's proposal constituted the least-cost means of satisfying the service needs of the customers of Highland, lacked sufficient foundation.

Also inexplicable and troublesome was the hearing examiner's indifference to investigating the least-cost-means issue further. Section 200.500 of the Illinois Administrative Code specifically provides:

"The hearing examiner shall have authority over the conduct of a proceeding and the responsibility for submission of the matter to the Commission for decision. The Hearing Examiner shall have those duties and powers necessary to these ends, consistent with applicable statutes and Commission rules and policies, including the following:

* * *

e) At any stage of the hearing or after all parties have completed the presentation of their evidence to call upon any party or the Staff of the Commission to produce further evidence which is material and relevant to any issue." 83 Ill. Adm. Code § 200.500(e) (1994).

The hearing examiner clearly had the authority to order further investigation by the staff into the issue of least-cost means when it became apparent that this issue was ignored. Likewise, the Commission is afforded wide discretion in the hearing process. Section 200.25 of the Illinois Administrative Code specifically provides:

"Section 200.25 Standards for Discretion

All Commission discretion under this Part shall be exercised so as to accomplish the goals set forth in the remainder of this Section.

(a) Integrity of the fact-finding process—The principal goal of the hearing process is to assemble a complete factual record to serve as basis for a correct and legally sustainable decision." 83 Ill. Adm. Code § 200.25(a) (1994).

To not order further investigation of the issue of cost was a clear abuse of discretion on the part of both the hearing examiner and the Commission.

We would be remiss not to point out that the numbers submitted by the parties do not, in our estimation, clearly indicate that the Agency's proposed line constitutes least-cost means. The estimated cost of the 138-kilovolt transmission line proposed by the Agency was $3,280,651. The estimated cost of the new Agency substation was $2,684,500. Together, these sums amount to nearly $6 million. It was disclosed that in order to connect the substation with the existing delivery point, Highland will have to connect, at its own expense, 1 3/4 miles of 34.5-kilovolt electric transmission line. While we are not certain what this would exactly cost, the record discloses that the estimated cost of each mile of line is approximately $250,000. Therefore, Highland would be faced with almost $500,000 in additional costs for construction of this line.

Furthermore, it was determined that the Agency severely underestimated the cost of obtaining easements for its proposed line. Originally, the estimate was $225,000 to $236,000, including all legal costs. However, after additional hearings, at CURED's insistence, it was disclosed that offers of $613,408.50 had been made to landowners in order to purchase these easements, yet not even one easement had been obtained as a result of these offers. And while we will not speculate as to what it might cost to institute eminent domain proceedings, suffice it to say this could add considerable amounts to the final bill. On the other hand, the East Collinsville-Highland line proposed by CURED and the landowners was estimated to cost $6.9 million, not including the rebuilding of the Highland substation to accommodate 138-kilovolt power. While at first glance the Agency's proposed route appears to cost less, upon closer reflection, as summarized above, it is clear that the Aviston-Highland line could well exceed the initial $6.9 million estimate of the East Collinsville-Highland line.

The record is obviously incomplete as to the least-cost-means requirement. What makes this matter even more disconcerting is the fact that the Agency is contractually liable for only up to $3 million in the total cost of this project, while the costs will in all likelihood exceed $6 million. The Agency, therefore, does not have any real or substantial interest in choosing the least-cost-means method of transmitting electricity. This makes the issue of cost even more important and indicates a need for complete investigation of the issue. We find that the Commission abused its discretion in not ordering additional proceedings and ordering its staff to investigate the issue of least-cost means. The order of the Commission granting the Agency a certificate of public convenience and necessity must be reversed, and the cause must be remanded with directions to conduct a

*complete* investigation into the section 8—406(b) requirement of least-cost means.

## II

■ Because of our determination on the issue of cost, we need not address the other contentions raised by CURED. However, we do note great misgivings concerning section 4.7 of the coordination-and-interchange agreement between the Agency and Illinois Power, which required Illinois Power to remain neutral during the certificate proceedings. While we do not go so far as to say that such an agreement is against public policy and negates the issuance of a certificate of public convenience and necessity, this matter should also be investigated thoroughly upon remand, specifically in light of least-cost-means considerations.

■ Finally, we agree with CURED that the Commission, pursuant to section 8—502 of the Public Utilities Act (220 ILCS 5/8—502 (West 1994)), has the authority to require Illinois Power to share its East Collinsville-Highland right-of-way with the Agency, should that route be deemed superior. Section 8—502 specifically provides:

"§ 8—502. Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that public convenience and necessity require the use by one public utility of the conduits, subways, wires, poles, pipes or other property or equipment, or any part thereof, on, over or under any street or highway, belonging to another public utility, and that such use will not prevent the owner or other users thereof from performing their public duties nor result in irreparable injury to such owner or other users of such conduits, subways, wires, poles, pipes or other property or equipment, or in any substantial detriment to the service, and that such public utilities have failed to agree upon such use or the terms and conditions or compensation for the same, the Commission may, by order, direct that such use be permitted and prescribe a reasonable compensation and reasonable terms and conditions for such joint use. If such use be directed, the public utility to whom the use is permitted shall be liable to the owner or other users of such conduits, subways, wires, poles, pipes or other property or equipment, for such damage as may result therefrom to the property of such owner or other users thereof." 220 ILCS 5/8—502 (West 1994).

The Commission declined to answer this question, finding that there were sufficient grounds in the record for rejecting the East Collinsville-Highland right-of-way. However, we believe that section 8—502 allows for such joint use, and this alternative line should be given proper consideration on remand. The testimony of staff witness

Jack McDonald clearly indicates that this alternative was not given due consideration. McDonald testified that Illinois Power disclosed that it would not approve the sharing of the right-of-way with the Agency and that this was a consideration he used in determining to support the Agency's proposed route. We believe the East Collinsville-Highland route warrants further consideration.

After reviewing the entire record, we find that an impartial investigation did not occur. Instead, the record reveals that the Commission focused on ways to approve the Agency's proposal, without seriously considering any alternatives. It may indeed be that the Aviston-Highland line is the best choice and the least-cost means, but the record presented to us for review leaves us with many serious concerns, and the order lacks sufficient foundation.

For the foregoing reasons, the order of the Illinois Commerce Commission issuing a certificate of public convenience and necessity is reversed, and the cause is remanded to the Commission, with directions, for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

KUEHN, P.J., concurs.

JUSTICE WELCH, dissenting:
I dissent. I believe there is evidence to support the Commission's findings and the findings of the Commission are not against the manifest weight of the evidence and therefore should be affirmed.